# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 15, 2021      Decided August 2, 2022

No. 20-1400

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

OFFICE OF PERSONNEL MANAGEMENT AND UNITED STATES
DEPARTMENT OF AGRICULTURE,
INTERVENORS

———

Consolidated with 20-1402, 20-1403

———

On Petitions for Review of an Order
of the Federal Labor Relations Authority

———

*Kathryn W. Bailey* argued the cause for petitioners. With her on the briefs were *Gregory O'Duden, Julie M. Wilson, Jessica Horne, David A. Borer, Andres M. Grajales, Mark L. Vinson, Judith E. Rivlin*, and *Teague P. Paterson*.

*Rebecca J. Osborne*, Deputy Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With her

on the brief were *Noah Peters*, Solicitor, and *Sarah C. Blackadar* and *Joshua D. Brown*, Attorneys.

*Joseph F. Busa*, Attorney, U.S. Department of Justice, argued the cause for intervenors. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, and *Melissa N. Patterson*, Attorney.

Before: MILLETT, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: The Federal Service Labor-Management Relations Statute grants the heads of federal agencies the right to review collective bargaining agreements before they go into effect. Once an agreement passes such review, the Statute forbids enforcement of new regulations that conflict with the agreement. The question presented is whether the triggering of a continuance clause, which extends a contract pending negotiations of a successor agreement, permits a second round of agency-head review and enforcement of conflicting regulations that became effective after the original agreement. We hold that the operation of a continuance clause does not have either consequence.

I

A

The Statute gives certain federal workers the right to engage in collective bargaining with their employing agency. 5 U.S.C. § 7102(2). Negotiations result in a collective bargaining agreement, which sets the terms and conditions of

employment within the agency. *Id.* § 7114(a)(4). The Federal Labor Relations Authority administers the Statute. *Id.* § 7105.

The Statute permits an agency head to review a collective bargaining agreement before it takes effect. 5 U.S.C. § 7114(c)(1). The agency head must approve the agreement unless it conflicts with applicable federal law. *Id.* § 7114(c)(2). If the agency head fails to act within 30 days of the agreement's execution, the agreement takes effect and binds the parties for its duration. *Id.* § 7114(c)(3).

The Statute generally prohibits agencies from enforcing regulations that conflict with the terms of an existing collective bargaining agreement and that became effective after the agreement. 5 U.S.C. § 7116(a)(7). This prohibition runs for the life of the agreement. But once a collective bargaining agreement expires, all regulations issued since its effective date become enforceable. *Dep't of Com. PTO & NTEU Chapter 245*, 65 F.L.R.A. 817, 819 (2011).

B

Collective bargaining agreements often specify what happens when the agreement nears its expiration and the parties have not negotiated a successor contract. Relevant terms may include continuance clauses and rollover clauses.

A continuance clause allows either party to extend the duration of an expiring agreement until its successor is in place. As the FLRA has explained, a continuance clause provides that, "where renegotiations are requested, the existing agreement continues in force until the parties reach a new one." *Decision On Request For General Statement Of Policy Or Guidance*, 71 F.L.R.A. 986, 986 (2020) (*Guidance*). The following language is illustrative:

> If renegotiation of the Agreement is in process but not completed upon the expiration date of this Agreement, this Agreement will be extended until the renegotiations have been completed.

Collective Bargaining Agreement between the National Alliance of Postal and Federal Employees (NAPFE) and the Centers for Disease Control and Prevention 42, Art. 40.

A rollover clause, by contrast, automatically renews a collective bargaining agreement when neither party wishes to renegotiate. Such a clause typically specifies a window for either party to give notice of its desire to renegotiate. If neither party does, the agreement "rolls over" for a new term. The following language is illustrative:

> This Agreement will remain in full force and effect for 6 years from its effective date and automatically renew itself from year to year thereafter. However, either party may give written or electronic notice of its intent to add, amend, reopen, modify or terminate existing Articles of the Agreement not more than 120 or less than 90 calendar days prior to the expiration date.

National Agreement between the American Federation of Government Employees (AFGE) and the Social Security Administration 33, Art. 7, § 2.

## C

The Department of Agriculture asked the FLRA for guidance on whether an agency head may review a collective

bargaining agreement when it is extended under a continuance clause. The Authority concluded that agency heads may do so. *Guidance*, 71 F.L.R.A. at 989. It further concluded that, when an agreement is so extended, the employing agency may begin to enforce regulations that conflict with the agreement and that became effective after the agreement's original effective date. *Id.*

Member DuBester dissented. In his view, the Authority should not have given general guidance divorced from the precise language of specific continuance clauses. *Id.* at 990. Further, he concluded that the guidance conflicts with the Statute and with FLRA precedent. *Id.* at 990–91.

Three unions petitioned for review of the FLRA's order. The USDA, along with the Office of Personnel Management, intervened to defend the guidance. We have jurisdiction under 5 U.S.C. § 7123(a). *See AFGE v. FLRA*, 750 F.2d 143, 144 (D.C. Cir. 1984).

II

We review FLRA orders under the standards set forth in the Administrative Procedure Act. 5 U.S.C. § 7123(c). And we review FLRA interpretations of the Statute under the familiar *Chevron* framework. *AFGE, AFL-CIO, Local 2031 v. FLRA*, 878 F.2d 460, 464 (D.C. Cir. 1989) (per curiam); *see Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984). Thus, we defer if the Authority has reasonably construed an ambiguous provision, but we use all available tools of statutory construction to decide whether the provision is ambiguous. *See id.* at 842–43 & n.9.

III

The guidance at issue interpreted two provisions. First, the FLRA read section 7114(c) to permit agency-head review of a collective bargaining agreement when a party has extended it under a continuance clause. Second, the FLRA read section 7116(a)(7) not to bar the employing agency from enforcing later-in-time regulations that conflict with the agreement. We set aside both interpretations.

A

We start with agency-head review. Section 7114(c) permits such review only "30 days from the date the agreement is executed." 5 U.S.C. § 7114(c)(2). So the question is whether the extension of an agreement under a continuance clause constitutes the execution of a new agreement. The Statute does not define "executed," so that term presumably derives its meaning from background principles of contract law. *See FAA v. Cooper*, 566 U.S. 284, 292 (2012). Under those principles, a written agreement is executed when the parties complete the formalities necessary to bring the agreement into its final, legally enforceable form. *See, e.g.*, *Housing Auth. of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 811 (Tex. Ct. App. 2011); *Nielsen Constr. Co. v. Int'l Iron Prods.*, 22 Cal. Rptr. 2d 497, 500 (Cal. Ct. App. 1993); *Execute*, Black's Law Dictionary (11th ed. 2019).

The guidance posits the execution of a new agreement—and thus a second round of agency-head review—whenever an existing agreement is extended under a continuance clause. 71 F.L.R.A. at 988. But a continuance clause takes effect when either party seeks *unilaterally* to renegotiate the terms of an expiring agreement. It manifests the parties' intent to be bound by the terms of their *original* agreement pending further

negotiations.  And it remains in effect only while the parties continue to *disagree* over the terms of any successor agreement.  Thus, a continuance clause "simply lengthens the *existing* agreement for a new period of time."  *Eastham v. Chesapeake Appalachia, LLC*, 754 F.3d 356, 362 (6th Cir. 2014) (applying Ohio law) (emphasis added); *see also Nebo Ventures, LLC v. NovaPro Risk Sols., LP*, 752 S.E.2d 18, 27 (Ga. Ct. App. 2013) ("An extension … does not contemplate a new agreement." (cleaned up)); *Extension*, Black's Law Dictionary (11th ed. 2019) (providing for the "continuation of the same contract for a specified period"); *Renewal and Extension of Contracts, Generally*, 17B C.J.S. Contracts § 668 (2020) (similar).  In other words, an agreement with a continuance clause is simply a contract that expires on the later of a date certain or the adoption of a successor agreement.  For these reasons, neither the invocation nor the operation of a continuance clause executes a new agreement.

The guidance relied on administrative precedent addressing the operation of rollover clauses.  71 F.L.R.A. at 988–89 & nn.29–30.  It cited an order holding that an "automatically renewed agreement is subject to agency-head approval" upon each renewal.  *Kansas Army Nat'l Guard*, 47 F.L.R.A. 937, 942 (1993).  Whatever the merits of that ruling, it has no applicability to continuance clauses.  A rollover clause takes effect when neither party expresses a desire to renegotiate during a specified window, which may plausibly be described as assenting to a new agreement through mutual inaction.  *See*, *e.g.*, *Eastham*, 754 F.3d at 361–62 (rollover clause specifies how "to execute a *new* contract" (cleaned up)); *Distillery Rectifying & Wine Workers Int'l Union of Am. v. Brown-Forman Distillers Corp.*, 213 S.W.2d 610, 613 (Ky. 1948).  In contrast, we have found no support for treating the invocation of a continuance clause as executing a new agreement.

The FLRA contends that the word "executed" is at least ambiguous enough for its interpretation to warrant *Chevron* deference. Two of the cases it cites merely confirm the uncontroversial principle that the parties themselves may determine what steps should be required to execute—*i.e.*, finalize—their agreement. *See Ass'n of Civilian Technicians Kentucky*, 70 F.L.R.A. 968, 969 (2018); *Ft. Bragg Ass'n of Teachers*, 44 F.L.R.A. 852, 857–58 (1992). Its third case held that the agreement subject to agency-head review includes terms imposed by the Federal Service Impasses Panel in binding arbitration. *AFGE v. FLRA*, 778 F.2d 850, 857 (D.C. Cir. 1985). That holding rests on the statutory definition of the phrase "collective bargaining agreement," which includes terms imposed by the Impasses Panel. 5 U.S.C. § 7103(a)(8); *see AFGE v. FLRA*, 712 F.2d 640, 646 n.24 (D.C. Cir. 1983). Our reasoning on this point does nothing to undercut the default rule that, absent a statutory directive to the contrary, a contractual agreement requires the parties' mutual assent. *See, e.g.*, *Northland Capital Corp. v. Silver*, 735 F.2d 1421, 1427 (D.C. Cir. 1984). Nor do the *AFGE* cases say anything about *when* an agreement is "executed"—a question we did not address. *See* 778 F.2d at 857 ("a Panel-imposed settlement, *once adopted by the parties*, should be regarded as part of a collective bargaining agreement" (emphasis added) (quoting 712 F.2d 640, 646 n.24)). None of these cases bears on the question presented here.

Because invoking a continuance clause does not execute a new agreement, there is no statutory basis for a second round of agency-head review.

B

Section 7116(a)(7) forbids employing agencies from enforcing most regulations that conflict with a collective bargaining "agreement" that was "in effect" before the regulation issued. 5 U.S.C. § 7116(a)(7). The FLRA concluded that, once an agreement has been extended through a continuance clause, the agency may enforce all conflicting regulations that became effective before the extension.

For many of the reasons already discussed, section 7116(a)(7) cannot bear that interpretation. As shown above, contract extensions preserve an existing agreement rather than supplant it with a new one. Thus, an extended contract is the same "agreement" that was "in effect" before the extension. And so long as it remains in effect, the employing agency may not enforce new regulations that conflict with it.

The FLRA's own description of continuance clauses reinforces our conclusion. According to the Authority, a continuance clause provides for an existing agreement to remain "in force" during renegotiations. *Guidance*, 71 F.L.R.A. at 986. Yet section 7116(a)(7) bars enforcement of conflicting regulations while an agreement remains "in effect." And there is no difference between the terms "in force" and "in effect," which are used interchangeably. *See, e.g.*, *Bhd. of R.R. Trainmen v. Akron & Barberton Belt R.R. Co.*, 385 F.2d 581, 611 (D.C. Cir. 1967) (labor agreements "in force continued in effect"); *Liddell by Liddell v. Bd. of Educ. of St. Louis*, 105 F.3d 1208, 1211 (8th Cir. 1997) (similar).

Seeking deference, the FLRA contends that the phrase "in effect" is ambiguous because the terms of expired collective bargaining agreements sometimes continue to have legal force. For support, the Authority cites *U.S. Border Patrol Livermore*

*Sector*, 58 F.L.R.A. 231 (2002), which states "the general principle that parties to an expired agreement continue to be bound by the provisions of that agreement until otherwise agreed or the provisions are modified in a manner consistent with the Statute." *Id.* at 233. But this case does not involve expired agreements. And the fact that even expired agreements *may* in some sense remain "in effect" hardly supports the FLRA's position that agreements extended under a continuance clause do *not* remain "in effect."

Because the invocation of a continuance clause extends a collective bargaining agreement pending negotiations over its successor, the existing agreement remains "in effect" until a new agreement is in place. Thus, the employing agency may not enforce regulations that conflict with the agreement and that became effective after it did.

IV

The FLRA's guidance conflicts with the Statute, so we grant the petitions for review and set aside the guidance.[1]

*So ordered.*

---

[1] Given our disposition, we need not address the unions' alternative argument that the FLRA insufficiently justified its decision to issue general guidance divorced from the terms of an actual agreement.